
IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
Greeneville Division

| | |
|---|---|
| IN THE MATTER OF SEARCH OF ) | |
| STORED ELECTRONIC DATA ) | |
| CONTAINED IN MOTOROLA E5 ) | No. 2:21-MJ-4 |
| PLAY 16G ) | |

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR SEARCH WARRANT AND SEARCH WARRANT

I, Sollie W. Rabun III, of the United States Department of Justice, Drug

Enforcement Administration, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      This affidavit is submitted in support of an application under Rule 41 of the

Federal Rules of Criminal Procedure for a search warrant authorizing the examination of

property—an electronic device—which is currently in law enforcement possession, and the

extraction from that property of electronically stored information described in Attachment

B.

2.      I, Sollie W. Rabun III, am an investigative or law enforcement officer within

the meaning of Section 2510 (7) of Title 18 of the United States Code, that is, an officer of

the United States who is empowered by law to conduct investigations of, and to make

arrests for, offenses enumerated in Section 2516 of Title 18 of the United States Code.  As a

Drug Enforcement Administration Task Force Officer, I am also a Federal law enforcement

officer as defined by Rule 41(a)(2)(C), that is, a member of a category of officers authorized

by the Attorney General to request a search warrant.

3.      I attended Basic Police School at the Walter's State Basic Police Academy

and was qualified to serve as a law enforcement officer in Tennessee by the Peace Officer

Standards and Training Commission. I have been a certified police officer for approximately seventeen years. I was employed by the Johnson City Police Department for ten years. Five and one-half of those years I spent as a uniformed patrol officer. During that time, I made hundreds of arrests of subjects for illegally possessing drugs and for illegally possessing drugs for resale. I was then transferred to the 1st Judicial District Drug Task Force and spent four and one-half years there as a Narcotics Agent. During that time, I investigated hundreds of cases involving the illegal sale and distribution of drugs.

4. I now work for the Tennessee Highway Patrol as a State Trooper and have been in this capacity for ten years. During this time, I have been an Interdiction Trooper for over five years. I have made many arrests for the illegal possession of controlled substances. I am currently assigned to the Drug Enforcement Administration as a Task Force Officer. I have extensive training and experience in the field of illegal drug investigations. I have received numerous hours of on the job training while working with other law enforcement officers of the Tennessee Highway Patrol and other local, state, and federal law enforcement agencies. Along with on the job training, I have also received numerous hours of training in various criminal investigation courses. These courses include, but are not limited to, Basic Gang Investigations, Basic Narcotics Investigations, Criminal Investigations, Basic Clandestine Laboratory Investigations, Marijuana Grow Investigations through the Regional Organized Crime Information Center, and Interview and Interrogation training. I have also been a member of the Tennessee Narcotics Officers Association. As a member of the aforementioned association, I have attended four, five day conferences in which I received training in various drug enforcement topics, to include, investigating criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute cocaine, heroin, methamphetamine, marijuana and other dangerous drugs prohibited by law, search and seizure law, and many other facets of drug

law enforcement. I have also received a certificate of training by the Tennessee Dangerous Drugs Task Force and Drug Enforcement Administration ("DEA") certifying me as a Clandestine Laboratory Technician.

5.      During my employment as a Narcotics Investigator and DEA Task Force Officer, I have participated in multiple investigations involving the seizure of marijuana, methamphetamine, cocaine and prescription narcotics, the seizure of narcotic related records and other types of evidence that document a criminal organization's activities in both the manufacturing and distribution of controlled substances.  To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance and various types of informants and cooperating sources.  Through these investigations, my training and experience, and conversations with other experienced Agents and law enforcement personnel, I have become familiar with the methods used by traffickers to smuggle and safeguard narcotics, to distribute narcotics, and collect and launder related proceeds.  I am aware of the sophisticated tactics they routinely use to attempt to thwart any investigation of their narcotics organizations.  My knowledge of these tactics, which include the utilization of numerous different wireless telephones, beepers, counter surveillance, elaborately planned distribution schemes tied to legitimate businesses, false or fictitious identities, and coded communications and conversations, has been particularly useful and relevant to this investigation. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.     The property to be searched is an electronic device, a Motorola E5 Play 16G (hereinafter referred to as "The Target Telephone"), taken from the person of Darrel BROWN on November 16, 2020. The Target Telephone is currently in the custody the United States Drug Enforcement Administration and located in the Eastern District of Tennessee.

7.     The applied-for warrant would authorize the forensic examination of the Target Telephone for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.     In the Fall of 2020, the 2nd Judicial District Drug Task Force ("2nd DTF"), Tennessee Bureau of Investigation ("TBI"), and Drug Enforcement Administration ("DEA") began an ongoing investigation into the illegal transportation and distribution of methamphetamine in the Eastern District of Tennessee. Through this investigation, Darrel Lee BROWN has been identified as an individual responsible for the sale and distribution of methamphetamine in the Eastern District of Tennessee. During the investigation, agents have identified BROWN's wireless telephone was being used by BROWN to distribute methamphetamine in the Eastern District of Tennessee.

9.     On September 16, 2020, Agents from the 2nd Judicial District Drug Task Force (DTF) used a confidential source (CS) to make a controlled purchase of approximately one ounce of methamphetamine and two Roxicodone pills from BROWN at the Dollar General Store parking lot, located at 2057 Highway 75, Blountville, TN. Prior to the controlled buy the CS contacted BROWN's Wireless telephone, via text message, and arranged the purchase of methamphetamine with BROWN.

10.     On September 22, 2020, Agents from the 2nd DTF made a controlled purchase of approximately one ounce of methamphetamine from BROWN at the Johnson City Mall parking lot, located at 2011 N. Roan St, Johnson City, TN. Prior to the controlled buy the CS contacted BROWN's Wireless telephone, via text message, and arranged the purchase of methamphetamine with BROWN.

11.     On September 29, 2020, Agents from the 2nd DTF made a controlled purchase of approximately one ounce of methamphetamine and 6 Roxicodone pills from BROWN at the Sleep Inn Hotel parking lot, located at 2020 Franklin Terrace Ct, Johnson City, TN.  In order to arrange the purchase, the CS contacted BROWN's Wireless telephone, via text message, and arranged the purchase of methamphetamine with BROWN.

12.     On October 20, 2020, the CS sent a text message to BROWN on his Wireless telephone to see if BROWN would be available on the following day and BROWN responded that he would be around.

13.     On October 21, 2020, agents interviewed a Confidential Source (CS) in reference to his/her knowledge of the distribution of methamphetamine in the Eastern District of Tennessee.  The CS identified BROWN as a distributor of methamphetamine. The CS stated that BROWN is continuing to distribute large quantities of methamphetamine in the areas of Sullivan and Washington counties in Tennessee. The CS stated that BROWN goes out of town regularly to "re-up." (Based on my training and experience "re-up" is when a drug distributor purchases additional drugs for further distribution.)

14.     On November 16, 2020, agents observed a stolen vehicle in the parking lot of 293 S. Austin Springs Rd and learned that BROWN has an active warrant regarding the stolen vehicle. During the investigation, agents learned that BROWN was residing at 293

S. Austin Springs Rd in apartment 64. Agents set up surveillance on the apartment. During the surveillance, agents observed BROWN exit and re-enter apartment 64. WCSO investigators were then notified of the location of BROWN and the stolen vehicle.

15.    On November 16, 2020, agents observed BROWN leave apartment 64, wearing a backpack, and drive of in a silver Jeep Cherokee that was registered to him. Agents informed WCSO Investigator Will Rhodes, who was in the area. Inv. Rhodes observed BROWN commit a traffic violation by running a stop sign at Austin Springs Rd and Oakland Ave in Johnson City, TN. Inv. Rhodes stopped BROWN and took him into custody on the active warrant.  Inv. Rhodes used K-9 Mali to conduct a free air sniff of the exterior of the vehicle. K-9 Mali gave a positive response on the vehicle. A search was conducted of the vehicle which yielded over 900 grams of methamphetamine, 50 10mg Oxycodone pills, 94 30mg Oxycodone pills, 23 8mg Suboxone pills, digital scales, a Samsung Galaxy S20 wireless telephone, a Motorola E5 Play 16G wireless telephone, and numerous empty plastic baggies. All these items were located in the backpack that BROWN was observed wearing when he left his apartment.

16.    On November 16, 2020, TFO Vince Walters requested and was granted a state search warrant for 293. S. Austin Springs Rd #64, Johnson City, TN, 37601. A search of the apartment yielded multiple ounces of marijuana, digital scales, a sawed-off shotgun, and numerous documents linking **Darrel** BROWN to the apartment.

17.    On the same date, agents interviewed BROWN at the WCSO. BROWN was advised of his Miranda Rights and signed the Advice of Rights form stating that he understood those rights. BROWN agreed to talk with investigators about the illegal items that were located in his vehicle and at the apartment. He stated that the Samsung Galaxy S20 and the Motorola E5 Play 16G wireless telephones that were in the vehicle belonged to him. He stated that the Samsung Galaxy had the phone number 423-251-0399 and that the

Motorola E5 Play 16G had the number 423-482-3414. BROWN stated that he has been selling methamphetamine and illegal narcotic prescription pills for 1 ½ to 2 years. He said that he would originally pick up 3-5 ounces of methamphetamine at a time on a weekly basis. He went on to say that he progressed to getting 1-1 ½ pounds of methamphetamine on a weekly basis. BROWN stated that he had a received a pound or more on at least 8-9 occasions. He also stated that he would get around 100 Roxicodone pills at a time when he picked up the methamphetamine.

18.     BROWN was asked about the sawed-off shotgun in located in the apartment and stated that he had forgotten that he still had it when he originally stated that he did not have any weapons at the apartment.

19.     The Target Telephone is currently in the lawful possession of the DEA. On November 16, 2020, Washington County Tennessee Sheriff's Office Investigators took possession of the Target Telephone and the second phone and placed them into secure storage at the Washington County Sheriff's Office in Jonesborough, TN. On November 19, 2020, I took possession of the phone(s) and transported them to the DEA office, Johnson City Post of Duty, in Johnson City, TN.

20.     Based on my training and experience, I know that those involved in drug trafficking activities commonly use wireless telephones, to include text messaging capabilities, to contact others to discuss and arrange drug transactions and to further their illicit drug business. I know that people in the use and distribution of controlled substances maintain records relating to their drug trafficking activities in their wireless telephones. I know that narcotics traffickers also keep stored messages, videos, and pictures, and telephone numbers relating to their drug trafficking activities within their wireless

telephones. These individuals routinely use wireless telephones to communicate with other individuals concerning various aspects of the use and distribution of controlled substances.

21. On November 24, 2020, I applied for a search warrant in 2:20-MJ-183 for information associated with Target Telephone. The Honorable Cynthia Richardson Wyrick granted the application. Execution of the warrant expired on December 8, 2020.

22. I attempted to execute the search warrant prior to the expiration date. Multiple attempts were made to gain access into the Target Telephone. However, the phone is password protected and could not be accessed with the software available to me during the allotted time frame. I now have access to additional software and analysts that will be able to unlock the Target Telephone and allow the execution of the search warrant.

23. The Target Telephone is currently in storage at the DEA. In my training and experience, I know that the Target Telephone has been stored in a manner in which its contents are, to the extent material to this investigation, in the same state as they were when the Target Telephone first came into the possession of the DEA.

## TECHNICAL TERMS

24. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to

and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory

cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash

memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

25.    Based on my training, experience, and research, I know that the Target Telephone has capabilities that allow it to serve as **a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.** In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

27.    Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28.    Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29.     Based on the foregoing, there is probable cause to believe that the stored electronic communications, specifically stored text messaging and the associated data for the above listed wireless phones, contain evidence of drug trafficking, specifically violations of Title 21 USC 841 and 846, Conspiracy to distribute methamphetamine and other drugs.

30.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on January 14, 2021, at Greeneville, Tennessee.

Respectfully submitted,

SOLLIE W. RABUN III
Drug Enforcement Administration, Task Force Officer

Subscribed and sworn to before me on January 14, 2021.

CYNTHIA RICHARDSON WYRICK
United States Magistrate Judge

**ATTACHMENT A**

The property to be searched is a Motorola E5 Play 16G, taken from the person of Darrel BROWN on November 16, 2020. The Target Telephone is currently in the custody the United States Drug Enforcement Administration and located in the Eastern District of Tennessee.

This warrant authorizes the forensic examination of the Target Telephone for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Target Telephone described in Attachment A that relate to violations of Title 21 USC 841 and 846, Conspiracy to distribute methamphetamine and other drugs, respectively and involve **Darrel Lee** BROWN, including:

     a.   lists of customers and related identifying information;

     b.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

     c.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

     d.   any information recording Darrel Lee Brown's schedule or travel;

     e.   all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the Target Telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

14